**WO**                  NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Unknown Party, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>Gilbert Unified School District,<br><br>        Defendant. | No. CV-16-02614-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiffs' Due Process Complaint by the Administrative Law Judge (ALJ) under the Individuals with Disabilities Education Act ("IDEA"). Plaintiffs filed a Complaint (Doc. 1, Compl.) with this Court seeking judicial review of that denial, and the Court now considers Plaintiffs' Opening Brief (Doc. 21, Br.), Defendant Gilbert Unified School District's ("the District") Answering Brief (Doc. 22, Answer), Plaintiffs' Reply Brief (Doc. 26, Reply), and the District's Sur-Reply Brief (Doc. 28, Sur-Reply). The Court finds this matter appropriate for decision without oral argument, s*ee* LRCiv 7.2(f), and therefore will deny Plaintiffs' Motion for Oral Argument (Doc. 27).

**I.    BACKGROUND**

Plaintiffs raise a claim against the District on behalf of themselves ("Parents," including "Mother" and "Father") and their minor son, R.M. ("Student"), to appeal an administrative decision under IDEA, 20 U.S.C. § 1415(i)(2). Plaintiffs allege Student is eligible for special education and related services that he receives at Ashland Ranch

Elementary School ("Ashland Ranch") in the District. (Br. at 5; Compl. ¶ 9.) After several team meetings where Parents expressed standing disagreement to some of the District's proposals concerning Student's individualized education program ("IEP"), the District issued a Prior Written Notice on January 22, 2016 ("PWN") that included two proposals: (1) to increase Student's special education services minutes by 20 minutes per day, and (2) to change the location of Student's special education services from Ashland Ranch to the Academic SCILLS Program at Pioneer Elementary ("Academic SCILLS"). (Br. at 8; Compl. ¶ 9.) Plaintiffs argue that the District's proposed actions in the PWN would not provide Student with a Free Appropriate Public Education ("FAPE") in Student's Least Restrictive Environment ("LRE") under IDEA. (Br. at 8; Compl. ¶ 9.) On January 28, 2016, Parents filed a Due Process Complaint with the Arizona Department of Education raising two claims. (Doc. 13, Admin. Record ("R.") 1, Agency Record at 3-4.) ALJ Tammy L. Eigenheer held a hearing on Plaintiffs' Due Process Complaint spanning five days, from May 16, 2016 to May 20, 2016, and issued a decision on July 29, 2016, denying Plaintiffs' Due Process Complaint. (R. 118, ALJ Decision ("ALJ") at 1, 23.)

In their Complaint before this Court, Plaintiffs allege the ALJ erred by, among other things, finding that there was no change of education placement but only a change in location, and not fully considering Student's progress on his IEP goals by applying a "better" or "more benefit" standard rather than the "some educational benefit" standard. (Compl. ¶ 12.) Plaintiffs request that the Court reverse and vacate the ALJ's July 29, 2016 decision, enter judgement in their favor, and award Plaintiffs their costs and attorneys' fees. (Compl. at 11.)

The ALJ decision in this case is a 23-page order setting forth the witnesses, evidence, and issues considered at the hearing, with detailed findings of fact and conclusions of law. (ALJ at 1-23.) The ALJ states she considered the entire record, including all the testimony and every exhibit. (ALJ at 1, 4.) Because the Court finds the ALJ was thorough and careful in her findings, the Court concludes they are entitled to significant weight. *JG v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008).

Student, who has Down Syndrome, first began attending a school in the District in the MAGIC preschool program, a combination of a fully self-contained classroom and an integrated preschool classroom. (ALJ at 4 ¶¶ 1-2.) Student's "soaring" progress in the program was mostly attributed to spending 60 to 75% of his time in the self-contained classroom, but Mother considered her decision to enroll him in this program and subsequently labeling him as a student in need of a self-contained classroom, one of her "biggest mistakes." (ALJ at 4 ¶ 2.) Student's assessments in early 2015, from a multi-disciplinary evaluation team, reported very low to low cognitive scores, delayed social and emotional functioning, severely delayed speech with decreased intelligibility in connected speech, and significantly below average fine motor and perceptual skills. (ALJ at 5 ¶ 3.)

Parents argued against the District's initial recommendation to place Student directly in Academic SCILLS for kindergarten, and the District instead adopted an IEP for Student on May 8, 2015 ("May IEP"). (ALJ at 6 ¶¶ 4-5.) The May IEP placed Student at the school closest to his home ("home school"), Ashland Ranch, with goals and services in many areas, including, for example, occupational therapy and 105 minutes per day of specialized instruction (60 minutes for reading, 30 minutes for math, and 15 minutes for writing expression) in the pull-out Resource Program classroom ("Resource Room"). (ALJ at 6 ¶ 5.) This placed Student at a "Level B" service code, meaning he would spend at least 40% and no more than 79% of his day inside a regular classroom. (ALJ at 6 ¶ 5.) In September 2015, the IEP team wanted to increase Student's speech and language minutes, but Parents initially disagreed because it would decrease his time in the general education classroom. (ALJ at 7 ¶ 7.) After parents later agreed, Student's IEP was amended on September 24, 2015 ("September IEP") to include occupational therapy and speech personnel in a setting outside the general classroom, if needed, in addition to the established service minutes spent in the pull-out Resource Room, but keeping him at a "Level B" placement. (ALJ at 7 ¶ 8.)

During an IEP meeting on December 3, 2015, the District again recommended to place Student in Academic SCILLS and encouraged Parents to visit the program due to their standing disagreement with the recommendation. (ALJ at 7 ¶ 9.) On January 19, 2016, another IEP meeting ("January IEP Meeting") occurred where Parents initially disagreed with a proposal to increase Student's service time in the Resource Room by another 30 minutes, but then compromised for an increase of only 20 minutes, and voiced their continuing disapproval of the Academic SCILLS proposal. (ALJ at 7 ¶ 10, 8 ¶ 11; R. 34 "Summary of Conference"). After this meeting, the District issued a PWN stating Student would begin attending Academic SCILLS at Pioneer Elementary, with the agreed-upon increase in service minutes for a total of 125 minutes, while noting that Student would remain in a "Level B" placement. (ALJ at 8 ¶ 11.) After Plaintiffs filed their Due Process Complaint following this PWN, Student remained at Ashland Ranch, his stay-put placement. (ALJ at 8 ¶ 12.)

## II. LEGAL STANDARD

Under IDEA, any aggrieved party may bring a civil action in federal district court after receiving the final decision of an ALJ. 20 U.S.C. § 1415(i)(2)(A). The moving party bears the burden of proving the ALJ's decision was not met by a preponderance of the evidence. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 908–10 (9th Cir. 2008). The district court "shall receive the records of the administrative proceedings," "shall hear additional evidence at the request of a party," and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

In a judicial proceeding under IDEA, a reviewing court is required to conduct a modified *de novo* review. *M.L. v. Fed. Way Sch. Dist.*, 341 F.3d 1052, 1061 (9th Cir. 2003). The Court reviews *de novo* the question whether a school district's proposed IEP provided a FAPE under IDEA, but reviews the ALJ's findings of fact only for clear error. *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1118 (9th Cir. 2016). Mixed questions of law and fact are reviewed *de novo*, unless the question is primarily

factual. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987). Courts must not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). However, it is a matter of district court discretion to decide the degree of deference to give in the ALJ's determination. *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1474 (9th Cir. 1993). When reviewing the administrative record as a whole, courts must give "due weight" to administrative bodies, a standard that is less deferential than judicial review of other agencies. *Timothy O.*, 822 F.3d at 1118 (internal citation omitted).

## III. ANALYSIS

### A. The ALJ did not err in concluding that the increase in Student's service minutes in the January IEP was an appropriate change.

While Plaintiffs use the increase in minutes to support their argument that the District's January 2016 proposals would constitute a change in Student's placement and not simply a change in location, Defendant correctly points out that the ALJ analyzed the increase in service minutes separately from the change to Academic SCILLS because they were separate proposals. (Br. at 13, 15 n.10; Answer at 14.) Indeed, the Summary of the January IEP Meeting shows that these proposals were considered separately, although in succession—Parents first agreed to a compromise with the District for a total increase of 20 minutes, decreased from their original proposal of an increase of 30 minutes, and then did not agree to the proposed change to Academic SCILLS.[1] (R. 84, Summary of January IEP Meeting at 1-2.) Therefore, the ALJ did not err when she analyzed the increase in minutes separately from the change to Academic SCILLS.

---

[1] Although the January IEP shows both an increase to minutes at Ashland Ranch and a move to Academic SCILLS, the ALJ notes in her decision that this was a typographical error and no agreement regarding Academic SCILLS was reached despite the noted agreement for the increase in service minutes, as confirmed during the hearing. (R. 83, January IEP, at 29-31; ALJ at 8 ¶ 11 n.9; *see also* R. 120, Transcript of ALJ Hearing, at 69-70, 193.)

The ALJ also did not err in concluding that the increase in service minutes was appropriate by correctly applying the *Rachel H.* analysis. (ALJ at 18-19). In *Sacramento City School District, Board of Education v. Rachel H. by and through Holland*, the Ninth Circuit affirmed the four-factor test set out by the district court—which this Court discusses more fully below—to determine whether a special education classroom placement was more appropriate than a regular, or "mainstream," classroom. 14 F.3d 1398, 1404 (9th Cir. 1994). The *Rachel H.* factors are "a four-factor balancing test in which the court considered (1) the educational benefits of placement full-time in a regular class; (2) the non-academic benefits of such placement; (3) the effect [the student] had on the teacher and children in the regular class; and (4) the costs of mainstreaming [the student]." *Id.* Plaintiffs' issue with the increase in minutes for Student's IEP is primarily that it decreases the time Student could spend in the general education classroom with non-disabled students.[2] (Br. at 13.) The ALJ acknowledges that any increase in service minutes necessarily detracts from instruction time in the general education setting and "*may* affect a student's LRE" before going on to apply the *Rachel H.* factors. (ALJ Decision at 17 ¶ 7 (emphasis added).) The Ninth Circuit has affirmed the use of the *Rachel H.* factors to analyze whether a placement change represents the LRE. *See e.g., Clyde K. v. Puyallup Sch. Dist., No. 3*, 35 F.3d 1396, 1401 (9th Cir. 1994) (citing *Rachel H.*, 14 F.3d 1398), *superseded by statute on other grounds.* Thus, the ALJ did not err in using the *Rachel H.* factors to analyze the increase in minutes as a placement change.

Despite arguing that the ALJ "ignored" the increase in service minutes, Plaintiffs do concede this use of the *Rachel H.* factors in their Opening Brief, and even cite to *Clyde K.*.[3] (Br. at 15 n.10; 15-17 (citing 35 F.3d 1396, 1401).) The ALJ did not "ignore"

---

[2] Despite Parents' contention, even Student's September IEP notes that the addendum would result in "less interaction with his typically developing peers; however the team determined that any detrimental factors from [reduced time with] typical peers would be offset by the benefits of small group instruction," even though Student had to receive his service minutes one-on-one because there were no peers at Ashland Ranch who had needs similar to Student's level, unlike at Academic SCILLS. (ALJ at 7 ¶ 8, 13 ¶ 46, 13 ¶ 49, 20 ¶ 16.b; *see also* R. 74, September IEP, at 32.)

[3] Plaintiffs argue that the *Rachel H.* factors should not be centered around the

the increase in service minutes, but properly analyzed the increase in minutes as a change in placement separately from the Academic SCILLS issue. (*See* ALJ 17-21.) Similarly, the ALJ did not fail to explain how this increase was not a change in LRE, as Plaintiffs argue, but rather found that there was no effect upon Student's LRE that made the increase in minutes inappropriate under the *Rachel H.* factors. (Br. 15 n.10; *See* ALJ 17-21.)

The first *Rachel H.* factor concerns the educational benefits available to a disabled student in a regular classroom with any supplemental aids and services. *Clyde K.*, 35 F.3d at 1401 (citing *Rachel H.*, 14 F.3d at 1404). The Ninth Circuit held that academic needs weigh most heavily in the *Rachel H.* analysis, so when mainstreaming provides no educational benefit, "that finding can be dispositive of the entire LRE analysis, even if the other three factors weigh in favor of mainstreaming." *Katherine G.*, 261 F. Supp. 2d at 1173-74 (citing *Poolaw v. Bishop*, 67 F.3d 830, 836-37 (9th Cir. 1995)); *see also Baquerizo v. Garden Grove Unified Sch. Dist.*, 826 F.3d 1179, 1188 (9th Cir. 2016) (when the student would not have gained benefit in a typical classroom and "[the student's] academic needs weigh most heavily against a mainstream environment," a small classroom is FAPE); *Seattle Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1500-01 (9th Cir. 1996) (student was unable to derive any meaningful educational benefit from general education, where student's educational progress was deteriorating), *abrogated in part on other grounds*.

Plaintiffs' repeated criticism of the ALJ's analysis under the *Rachel H.* factors is that the ALJ and the District improperly compare the progress of Student and non-disabled students. (Reply at 10-12.) In discussing the first *Rachel H.* factor, the ALJ

---

numbers of minutes but "by looking at FAPE—what is the least restrictive environment in which the student can receive FAPE." (Reply at 10 (citing *Katherine G. ex rel. Cynthia G. v. Kentfield Sch. Dist.*, 261 F. Supp. 2d 1159, 1175 (N.D. Calif. 2003).) In doing so, Plaintiffs contradict their concession in the Opening Brief that the *Rachel H.* factors are used to analyze a new placement to determine if it is also the LRE. (Br. at 15-17.) Furthermore, that aspect of *Katherine G.* does not apply in this case; there, the district court only considered FAPE because it found the ALJ had failed to consider the testimony of key witnesses, which is not Plaintiffs' argument here. *Katherine G.*, 261 F. Supp. at 1174-75.

specifically concluded that the Resource Program was designed for students who can "meaningfully participate in the general education classroom" with specific instruction, but that "Student was not able to meaningfully participate in the general education classroom based on his skills and readiness," and instead "made the most progress during the year on his reading goals [when] he received 60 minutes per day of specialized instruction in the Resource Room." (ALJ at 10 ¶ 24, 11 ¶ 31, 18 ¶ 10.a.) The ALJ cites testimony from Student's general education teacher, who feels Student's needs are not being met in the general education classroom, where he is "his own learning island" with his paraprofessional, because his work is so different from that of his nondisabled peers that he is not truly participating in the instruction taking place in the general education classroom. (ALJ at 9 ¶ 17, 9 ¶ 20, 18 ¶ 10.a.)

The evidence shows Student may need more time and repetition to learn tasks due to his disability, and his resource teacher—who spent 105 minutes of one-on-one instruction with Student every day—found that Student could not consistently retain the skills she taught him. (ALJ at 10 ¶ 24.) Student is thus not deriving meaningful benefit from the general education classroom, and, considering his difficulties with retention even in the Resource Room, he is making little educational progress. Although Plaintiffs argue that Student received some social benefits and behavioral improvements from his social interactions with nondisabled peers in a general education classroom, (Br. at 12), the ALJ determined that student was overstimulated and exhibited occasionally disruptive behaviors in the general education classroom, making the second and third *Rachel H.* factors weigh in favor of the increase in service minutes.[4] (ALJ at 18 ¶ 10.b-c.) Regardless, the weight that the Ninth Circuit has accorded to this first educational benefit factor in *Rachel H.* alone compels the Court to conclude that Student's lack of educational benefit in a general classroom outweighs any comparably small social

---

[4] No evidence was presented to the ALJ or in any filings with this Court as to the fourth factor—cost—in the *Rachel H.* analysis, so it was not considered in the analysis by either the ALJ or this Court. (ALJ at 18 ¶ 10d.)

benefits. Therefore, the ALJ did not err in her use of the *Rachel H.* factors to conclude the 20 minute increase in service minutes, for a total of 125 service minutes, was appropriate.

### B. The ALJ did not err in concluding that Academic SCILLS was a change in location, and not a change in placement.

Plaintiffs erroneously use the proposed increase in service minutes to support their argument that the District's separate proposal to move Student to Academic SCILLS constitutes a change in placement, and not a change in location. (Br. at 13, 15 n.10.) As previously noted, the ALJ properly analyzed the increase in service minutes separately from the move to Academic SCILLS. Moreover, with regard to the Academic SCILLS proposal, the ALJ correctly used the four-factor analysis set out in "Letter to Fisher" to determine whether a change in educational placement or location has occurred. "Letter to Fisher," 21 IDELR 992 (OSEP 1994) (a policy letter from the U.S. Department of Education, Office of Special Education (OSEP)); *see also Wagner v. Bd. of Educ. of Montgomery Cnty., Md.*, 198 F. Supp. 2d 671, 673 (D. Md. 2002.) According to "Letter to Fisher," a court should consider: (1) whether the educational program set out in the student's IEP has been revised; (2) whether the child will be able to be educated with non-disabled children to the same extent; (3) whether the child will have the same opportunities to participate in non-academic and extracurricular services; and (4) whether the new placement option is the same option on the same continuum of alternative placements. "Letter to Fisher," 21 IDELR 992 (OSEP 1994).

In considering the first "Fisher" factor, Plaintiffs argue that Student's IEP has been revised because his September IEP stated "*all* core subjects in [Gen.] ed. setting – may be pulled to resource class after core instruction for support from SpEd teacher," while his January IEP stated "*some* reading, writing, math, science, and social studies instruction in the Gen Ed class with modifications/accommodations." (Br. at 11; Reply at 7 (quoting R. 74, September IEP, at 32; R. 83, January IEP, at 32) (emphasis added).) However, Plaintiffs concede that "[a] change in the educational placement can result when there is any *significant* change in the student's program." (Br. at 9 (citing *N.D. ex rel. Parents*

*Acting as Guardians Ad Litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1114 (9th Cir. 2010) (holding that movement from one type of program to another, for example from a regular class to home instruction, is a change in placement)[5] (emphasis added)).)

Here, there is no meaningful difference between "all" and "some" when considering the rest of Student's IEP; that is, the total service minutes of Student's special education time is unchanged and there is no addition of science or social studies to Student's service minutes in the special education classes. (*Compare* R. 74 at 29-32 *with* R. 83 at 29-32.) While the ALJ does not specifically address this in her analysis of the first "Fisher" factor, she does note that "Student's IEP could and would be implemented as written" at Academic SCILLS. (ALJ at 20 ¶ 16.a.) Additionally, the ALJ notes elsewhere that "no evidence was submitted that Student would not be educated with nondisabled students to the same extent," the level of Student's placement remains at "Level B" (between 40% and 79% of his time spent in general education), and Academic SCILLS was "designed to infuse instruction with the general education classes" and not replace it to any greater extent than the Resource Room at Ashland Ranch, as written in Student's IEP. (ALJ at 20 ¶ 16.b, 21 ¶ 16.d, 21 ¶ 19.) The change from "all" to "some" is not significant enough to be considered a change in Student's placement when there is no meaningful difference in the implementation of the IEP.

Plaintiffs also argue that Student's IEP would be changed because Academic SCILLS uses a different reading curriculum than either Pioneer Elementary's general education classroom or the Resource Room and general education classrooms at Ashland Ranch. (Br. at 11-12; Reply at 8.) IDEA requires schools to offer students an IEP reasonably calculated to enable a child to make progress in the general education curriculum. *Endrew F.* 137 S. Ct. at 1000. Beyond this, Congress left the educational

---

[5] Plaintiffs also cite Eighth Circuit case law to argue that *any* change necessitated by a student's needs is a change in placement and not location. (Reply at 9 (citing *Hale ex rel. Hale v. Poplar Bluffs R-I Sch. Dist.*, 280 F.3d 831, 833-34 (8th Cir. 2002)).) However, that court prefaced this conclusion with a fact-intensive inquiry, and that case involved a significant change in placement from home-schooling to a traditional school in violation of the student's stay-put placement. *Hale*, 280 F.3d at 833-34. No such facts are present here.

policy-making to state and local education officials to allow for maximum flexibility in tailoring educational programs to the needs of each student. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 450 (9th Cir. 2010) (holding that district was allow to choose its "methodology of education" to allow the addition of visual stimuli to benefit the student's acquisition of concepts despite the student's known severe communication issues) (citing *Rowley*, 458 U.S at 207; *Poolaw*, 67 F.3d at 834).

Although Student may use the same reading curriculum as nondisabled students in the general education classroom, Student's IEP does not specify any particular curricula. (R. 83, January IEP.) Additionally, both Student's IEP goals and the kindergarten standards for grade-progression identify sight word goals that Student had not yet met, and the Academic SCILLS teacher could address this through the sight word skills taught in the curriculum and implement new curricula if she found her students were unable to progress using her current curriculum. (R. 83, January IEP; ALJ at 9 ¶ 21; Answer at 12 (citing R. 121, Transcript of ALJ Hearing).) Student not need have the same curriculum as taught in the general education classroom if the method used by the special education classroom allows Student to make progress by meeting his IEP goals and the grade-level standards. Thus, this change in curriculum is not a significant enough change in Student's program to make Academic SCILLS a change in placement and not location. *See N.D.*, 600 F.3d at 1116.

Plaintiffs' only issue with the ALJ's analysis of the second "Fisher" factor—whether Student will be educated with non-disabled children to the same extent—and third "Fisher" factor—whether Student has the same non-academic and extracurricular opportunities—concerns the increase in service minutes. (Br. at 13; Reply at 8.) Aside from this increase—which the ALJ analyzed separately, as discussed above—"no evidence was submitted that Student would not be educated with nondisabled students to the same extent." (ALJ 20 ¶ 16.b.) A student's IEP dictates which subjects will be taught in the Academic SCILLS classroom and which will be taught in the general education classroom. (ALJ at 12 ¶ 38.) While all the other students in Academic SCILLS were

designated as "Level C" (greater than 70% of their day in the special education classroom) and used Academic SCILLS as a self-contained classroom, Student was a "Level B" placement and his IEP only provided for 125 service minutes in reading, writing, and math. (ALJ at 7 ¶ 8, 12 ¶ 40.) Student's IEP "could and would be implemented as written" at Academic SCILLS. (ALJ at 20 ¶ 16.a.) Therefore, Student would spend homeroom, science, social studies, all special classes (except for physical education, which was adapted for Student's needs in his IEP), lunch, parties, birthday celebrations, and any other special events in the general education classroom, just as he did at Ashland Ranch. (ALJ at 7 ¶ 8, 12 ¶ 38, 20 ¶ 16.b, 20 ¶ 16.c.) Thus, there were no changes to Student's time with his nondisabled peers, in both academic and nonacademic/extracurricular contexts, under either the second or third "Fisher" factors.

Finally, under the fourth "Fisher" factor—whether the new location is the same option on the same continuum of alternative placement—Plaintiffs argue that Academic SCILLS would shift Student's placement down the continuum. (Br. at 13; Reply at 9.) The ALJ concluded that there is no shift because Student's placement level remained at a "Level B" (inside a regular classroom for 40% to 79% of the day). (ALJ 21 ¶ 16.d; R. 83 at 32.) While Plaintiffs cite to the Hearing Transcript to support their assertion that Academic SCILLS would "replace" the general education classroom, Plaintiffs mischaracterize the testimony from the Special Education Elementary Programs Coordinator, because she clarified that the extent to which Academic SCILLS replaces the general education classroom depends on the individual student's needs and IEP. (Reply at 13 (citing R. 121, Transcript of ALJ Hearing, at 445:20-24); *but see* R. 121, Transcript of ALJ Hearing, at 445:24-446:8.) Indeed, the ALJ noted that the Academic SCILLS classroom was "a structured class designed to infuse instruction with the general education classes." (ALJ at 21 ¶ 19.) Because of Student's comparably lower "Level B" placement and limited number of service minutes, the Academic SCILLS classroom would not serve as a self-contained classroom to replace the general education classroom for Student, but rather a support for general education that would function as a direct

substitute for the Resource Room at Ashland Ranch. (ALJ at 12 ¶ 38, 20 ¶ 16.a, 21 ¶ 16.d.)

Under the "Fisher" factors, the change to the Academic SCILLS classroom at Pioneer Elementary is not a change in placement, but a change in location, and would function as a substitute for the Resource Room at Ashland Ranch. A school district has the administrative authority to choose the setting or physical school to implement a student's IEP without the parent's additional participation, so long as the school has the ability to implement the IEP and the parents participated in creating the IEP. *Deer Valley Unified Sch. Dist. V. L.P. ex rel. Schripsema*, 942 F. Supp. 2d 880, 887-89 (D. Ariz. 2013) (citing *Florence Cty. Sch. Dist. v. Carter*, 510 U.S. 7, 15, (1993); *N.S. v. Hawaii Dep't of Educ.*, Civ. No. 09–00343 SOM/KSC, 2010 WL 2348664, at *8 (D. Haw. June 9, 2010)). There is no significant change to Student's education program because Academic SCILLS can execute Student's IEP as it is written, without making any significant changes to the service minutes Student would spend outside the general education classroom. Therefore, the District has the authority to unilaterally change the location of Student's services from Ashland Ranch to Academic SCILLS at Pioneer Elementary.

**C. The ALJ did not err in concluding that the change in location of Student's services to Academic SCILLS provides Student with a FAPE in the LRE.**

Plaintiffs finally argue that the change to Academic SCILLS does not provide a FAPE to Student in the LRE. (Br. at 15.) In doing so, Plaintiffs continue to argue the change as a change in placement and not location, and thus erroneously use the *Rachel H.* factors. (Br. at 15-21; *Rachel H.*, 14 F.3d at 1404).

Plaintiffs contend that because the two programs offer identical services, there is no "requirement" to move Student away from his "home school," the preferred setting, "unless the services identified in the child's IEP require a different location." (Reply at 22-23 (quoting Letter to Trigg, 50 IDELR 48 (OSEP 2007)).) In fact, Student's IEP makes multiple references to receiving his service minutes in a small-group setting to

allow for the development of social and behavioral skills with peers working on similar academic and social skills. (ALJ at 7 ¶ 8; *see also* R. 83, September IEP, at 32.) There were no peers at Ashland Ranch at the same level of Student, and so he received his service minutes one-on-one with the resource teacher. (ALJ at 20 ¶ 16.b.) A classroom that will provide Student with services in an appropriate small-group setting exists at Academic SCILLS. (ALJ at 22 ¶ 22.) The District is justified to move Student to a location that can provide a more appropriate setting than his home school.

Plaintiffs also argue that Congress expressed a preference for students to attend the school they would attend if they were not disabled. (Br. at 21 (citing *McLaughlin v. Hold Pub. Sch. Bd. of Educ.*, 320 F.3d 663 (6th Cir. 2003)).) "A school district provides [a FAPE] if it: (1) addresses the child's unique needs, (2) provides adequate support services so the child can take advantage of the educational opportunities, and (3) is in accord with the [child's] individualized education program.'" *Forest Grove Sch. Dist. v. Student*, 665 F. App'x 612, 614 (9th Cir. 2016) (citing *Capistrano Unified Sch. Dist. v. Wartenberg ex rel. Wartenberg*, 59 F.3d 884, 893 (9th Cir. 1995)). Additionally, the Ninth Circuit has held that a student can receive a FAPE in the LRE by way of a special-education classroom placement when the student "could not have received a meaningful education in a full-inclusion general education setting." *A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.*, 627 F.3d 773, 781 (9th Cir. 2010); s*ee also Beth B. v. Van Clay*, 282 F.3d 493, 499 (7th Cir.2002) (mainstreaming is less appropriate when the student's academic and developmental progress was limited).

In *A.M.*, the Ninth Circuit concluded that a special-education classroom provided the student a FAPE in the LRE because the student was non-verbal and overwhelmed in the general-education classroom, and instead benefitted from the special-education setting. 627 F.3d at 781. Additionally, the student had opportunities for mainstreaming during lunch and recess, and even had the opportunity for mainstream classes if the student performed above the special-education curriculum. *Id.* Like in *A.M.*, Student was overstimulated in his general-education classroom despite his isolated learning

environment and separate one-on-one instruction in the Resource Room, and the District found he will benefit from the Academic SCILLS classroom's small-group environment and the IEP can be fulfilled as written. (ALJ at 9 ¶ 17, 12 ¶ 34, 18 ¶ 10.b, 20 ¶ 16.b.) Thus, Student can receive a meaningful benefit from his education at Academic SCILLS that he otherwise lacks at Ashland Ranch, even with the Resource Room.

Plaintiffs next argue the lack of a FAPE by way of Student's IEP, which they assert was too difficult in light of Student's circumstances. (Reply at 2, 11, 13-16 (citing *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1000 (2017)).) Plaintiffs contend that although Student's progress may not be comparable to that of his nondisabled peers or enough to satisfy his teachers, Student has progressed in light of his developmental expectancy or his "circumstances." (Reply. at 3, 11-14 (citing *Endrew F*. 137 S. Ct. at 1000-01).) In support, Plaintiffs seek to offer evidence of Student's circumstances through a report from a doctor who evaluated Student's progress on his IEP goals during his stay-put placement at Ashland Ranch, which addressed "whether the progress [Student] did make was reasonable 'for him.'" (Reply at 3; Doc. 15, Aff. of Joseph Gentry, PhD RE: Doc. 14, Pls.' Mot. for Leave to Submit Add'l Evidence; Doc. 20, Order.) However, the Ninth Circuit has stated that, "instead of asking whether the [educational plan] was adequate in light of [the student's] progress, the district court should have asked the more pertinent question of whether the [educational plan] was appropriately designed and implemented so as to convey [the student] with a meaningful benefit. We do not judge an [educational plan] in hindsight." *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999) (citing *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987); *Fuhrmann v. East Hanover Bd. of Educ.,* 999 F.2d 1031, 1041 (3d Cir. 1993)); *see also E.M. v. Pajaro Valley Unified Sch. Dist.*, 652 F.3d 1006 (9th Cir. 2011). Accordingly, the report Plaintiffs seek to offer as evidence of Student's circumstances and that Student's IEP was too difficult for him to make any progress is not appropriate, because it seeks to do so by showing his progress in hindsight. Thus, the content of the report was not considered by the Court.

Instead, the Court must evaluate the adequacy of Student's IEP at the time it was drafted. In *Adams*, the Ninth Circuit deferred to the hearing officer's thorough findings of fact, which stated that "the [educational plan] in place for [the student] was reasonably developed based on information available to the [multidisciplinary team]." 195 F.3d at 1149. Here, the ALJ did not make such an explicit finding, but she did discuss the formation of Student's IEP by describing the numerous assessments conducted by the multi-disciplinary evaluation team ("MET"), which resulted in an April 2015 report describing Student's psychoeducational issues, speech/language delays, and occupational therapy concerns. (ALJ at 5 ¶ 3.) The ALJ also discussed the meetings in May 2015 to form Student's May IEP, which contained a summary of Student's challenges and needs that paralleled the issues identified in the MET report and called for services to address those needs. (ALJ at 6 ¶ 4-6.) This structure was kept throughout the amendments made to Student's IEP, including the September IEP and the changes the District proposed in the January IEP and PWN. (ALJ at 6 ¶¶ 5-6; 7 ¶ 8; 8 ¶ 11.) The Court agrees that Student's IEP was adequate because, as the ALJ found, the IEP was reasonably developed from information gathered about Student's needs during the MET assessments.

In Plaintiffs' misguided *Rachel H.* analysis, they contend that the ALJ misunderstood the legal requirements of LRE because a school is only required to provide student with a "basic floor of opportunity" that provides "some educational benefit," and Student has made some academic progress. (Reply at 17, 19-20 (quoting *Katherine G.,* 261 F. Supp. 2d at 1175).) The Ninth Circuit has clarified that "[t]his does not mean, however, that the states do not have the power to provide handicapped children with an education which they consider more appropriate than that proposed by the parents" and that a student is receiving a FAPE when the student can derive a "meaningful benefit" from the educational plan. *Wilson v. Marana*, 735 F.2d 1178 (9th Cir. 1984); *A.M.*, 627 F.3d at 781. Moreover, the Supreme Court recently held that IDEA

is not "satisfied with barely more than *de minimis* progress" for students who cannot be educated in the regular classroom. *Endrew F.* 137 S. Ct. at 1000-01.

Plaintiffs indicate they are satisfied with "some progress" in light of Student's circumstances. (Reply at 13 (citing *Endrew F.*, 137 S.Ct. at 1000).) However, Student's circumstances do not require lowering the properly-calibrated IEP goals for his progress so that he can "receiv[e] instruction that aims so low [it] would be tantamount to sitting idly. . . awaiting the time when [he would be] old enough to drop out. The IDEA demands more." *Endrew F.* 137 S.Ct. at 1001 (quoting *Rowley*, 458 U.S. at 179) (internal quotation marks omitted). In fact, deeming Student's IEP goals to be too difficult, despite being appropriately developed to his needs, would, in essence, place him in the same position as the student in *Endrew F.*, whose IEP was too easy and deprived him of the chance to meet challenging objectives, hampering his educational growth. *Id.* at 1000. There, the Supreme Court expressed its dissatisfaction with an educational plan that was only "sufficient to show a pattern of, at the least, minimal progress" or was "reasonably calculated to enable [him] to make *some* progress," and the Court specifically overturned this understanding of a FAPE articulated by the lower courts. *Id.* at 997 (quoting lower courts' reasoning that erroneously supported a finding of a FAPE). As such, Plaintiffs' argument that Student was able to progress in light of his circumstances, however minimally, is not persuasive.

**IV. CONCLUSION**

The Court finds no error in the ALJ's conclusions, supported by the record, that Student's increase in service minutes was separate from the issue of Student's move to Academic SCILLS, and the increase in service minutes was appropriate. The record similarly supports the ALJ's conclusion that the change to Academic SCILLS was not a change in placement, but a change in location. The ALJ also did not err in concluding that the District could unilaterally decide this change in location, and it would provide Student with a FAPE in the LRE.

**IT IS THEREFORE ORDERED** denying Plaintiffs' claims in the Complaint (Doc. 1) and affirming the July 29, 2016 decision of the Administrative Law Judge.

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Oral Argument (Doc. 27).

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 31st day of July, 2017.

Honorable John J. Tuchi
United States District Judge